UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JAMES G. PERDIGAO

versus

ADAMS AND REESE, L.L.P.,                    CIVIL ACTION NO. 08-3570
CHARLES P. ADAMS, JR.,
B. JEFFREY BROOKS,                          SECTION: L
EDWIN C. LAIZER,
PAUL J. LASSALLE,                           JUDGE ELDON E. FALLON
THOMAS G. O'BRIEN,
MARK J. SPANSEL,                            MAGISTRATE: 5
MARTIN A. STERN, and
ROBERT A. VOSBEIN

## PLAINTIFF'S RICO CASE STATEMENT

NOW INTO COURT, through undersigned counsel, comes plaintiff, James G. Perdigao,

who hereby submits his RICO Case Statement and who respectfully represents as follows:

**Case Statement Item #1.**  The alleged unlawful conduct is in violation of 18 U.S.C.

1962(c) and 18 U.S.C. 1962(d).  The Complaint lists eight separate schemes, each of which

involve the individual RICO Defendants' operating, managing, and participating in the conduct

of the affairs of the enterprise by engaging in a pattern of racketeering activity (18 U.S.C.

1962(c) as well as conspiring to participate in the conduct of the affairs of the enterprise through

1

a pattern of racketeering in violation of 18 U.S.C. 1962(d).  Due to the overlap of factual

allegations, both claims will be addressed together within the framework of each scheme to

avoid repetition.

**Case Statement Items #2-5.**  The defendants, their alleged misconduct and basis of

liability (Case Statement Item #2); other alleged wrongdoers (other than defendants) and their

alleged misconduct (Case Statement Item #3); the alleged victims and how each victim was

allegedly injured (Case Statement Item #4), and a description of the predicate acts forming the

pattern of racketeering activity (Case Statement Item #5) will be addressed in connection with

each Complaint scheme as follows:

**I.  Scheme to Obstruct Justice Regarding the Morial Subpoena.**

*The defendants, their alleged misconduct and basis of liability:*  Defendants Adams,

Brooks, Lassalle, Laizer, O'Brien, and Stern reviewed Morial's work and billing records and

conspired and agreed not to produce documents which were responsive to the subpoena,

including Morial's e-mails, monthly client development logs, reports and billing realization

details, and billing proformas.  They also agreed and conspired to make decisions as to what

constituted the "official records" of the firm and were involved in or aware of the alteration of

documents responsive to the subpoena.  See Complaint, Par. 112-114. This misconduct

constitutes an obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.

When plaintiff discovered that responsive documents were being modified and altered,

plaintiff immediately brought the discovery to the attention of Adams.  Adams initially sought to

diffuse the tension in the conversation by indicating that he would use his considerable stroke in

the compensation process to make sure that those on the subpoena response team who "went

along with the program" would receive extra compensation. When plaintiff responded that no amount of money would justify him being a party to altering or concealing records from a federal grand jury, Adams responded that if plaintiff said anything, Adams would personally oversee plaintiff's expulsion from the firm, along with other threats. See Complaint, Par. 115-116. This misconduct constitutes obstruction of criminal investigations in violation of 18 U.S.C. 1510 and tampering with a witness in violation of 18 U.S.C. 1512.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Other alleged wrongdoers included Cheryl Teamer and Don McKinney. They were also involved in reviewing Morial's work and billing records, in preparing letters to Morial's clients regarding the subpoena and attorney-client privilege issues, and in making decisions not to produce documents which were responsive to the subpoena.

*The alleged victims and how each victim was allegedly injured:* Plaintiff was subjected to attempted bribery, threats, harassment and intimidation to obstruct, delay, hinder or prevent him from communicating information to the authorities regarding the firm's return on the Morial subpoena. Plaintiff, as well as other partners, were exposed to corporate/partnership criminal liability for the acts of the defendants, all of which were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint. In addition, by virtue of their unwitting receipt of a percentage of illegal partnership proceeds attributable to the RICO violations by the RICO defendants and their exposure to forfeiture of such funds, other partners, as well as the plaintiff, have been damaged in their business and property.

*Description of the predicate acts:* As set forth above, the predicate acts include

obstruction of justice (18 U.S.C. 1503), obstruction of criminal investigations (18 U.S.C. 1510), and tampering with a witness, victim or informant (18 U.S.C. 1512). Such misconduct took place in May-July, 2004. The predicate acts in this Scheme #1 do not involve predicate offenses of mail or wire fraud. The predicate acts were intended to protect and further a common plan to permit the continuation and non-disruption of a series of schemes described in the complaint whereby the RICO Defendants violated anti-corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent those illegal partnership proceeds from being exposed to forfeiture.

**II. Scheme to Drive Plaintiff Out of Partnership and to Relinquish his Partnership Interest by Means of Extortion.**

*The defendants, their alleged misconduct and basis of liability:* In July 2004, Defendants Vosbein and Adams discussed the deliberate misleading of federal prosecutors in connection with the Morial federal grand jury subpoena, including the decision not to produce responsive documents but instead to misdirect the federal investigators by delivering a stack of invoices that only said "for services rendered." Vosbein and Adams concluded their discussion by rejoicing in the fact that the feds could never figure out the scheme. As Adams walked down the hall, he came in the conference room where plaintiff was working and asked how plaintiff's resume was coming along. See Complaint, Par. 127. This misconduct constitutes a continuation of the above-referenced obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.

When plaintiff nervously tried to deflect the inquiry, Adams advised that he was still "incredibly pissed" about plaintiff's trouble-making on the Morial subpoena. Adams then sarcastically described the height of plaintiff's stupidity and naiveté for challenging plaintiff's

chief sponsor and political backer (Vosbein) with regard to his film tax credit business. Adams then bragged that he, Vosbein and others could easily take away all of plaintiff's clients and leave him "sucking wind." Adams then threatened to "bury" plaintiff by taking the position that management had not approved or authorized plaintiff's entrepreneurial activities. Adams then chuckled that withdrawing management's authorization and claiming that such authorization was never given would leave plaintiff "up the proverbial shit's creek without a paddle or a canoe." See Complaint, Par. 128.

Adams advised plaintiff that he would be well advised to resign from the partnership by the end of July 2004. Failing a voluntary resignation, Adams claimed that he would "gin up" a billing issue relating to plaintiff's entrepreneurial activities. With firm management telling the partnership that plaintiff's entrepreneurial activities were not authorized or approved, Adams bragged that he could get enough votes to vote plaintiff out of the partnership. Adams then advised the plaintiff that he would definitely enjoy his share of plaintiff's profit interest (i.e., plaintiff's partnership interest re-distributed to the remaining partners) and that while his share might not be enough for a new Lexus in the short term, it would sure go a long way toward the purchase. See Complaint, Par. 129. Adams then carried out these extortion threats. See Complaint, Par. 130-131. This misconduct constitutes obstruction of criminal investigations in violation of 18 U.S.C. 1510, tampering with a witness in violation of 18 U.S.C. 1512, and interference with commerce by extortion in violation of 18 U.S.C. 1951. Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi in July and August, 2004 in connection with his unlawful extortion activity.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Without additional discovery, plaintiff is unable to identify other alleged wrongdoers at this time.

*The alleged victims and how each victim was allegedly injured:* Plaintiff was subjected to extortion, threats, harassment and intimidation to obstruct, delay, hinder or prevent him from communicating information regarding the firm's return on the Morial subpoena, which ultimately resulted in the plaintiff resigning from the partnership and relinquishment of his valuable partnership interest, thereby damaging him in his business or property. Plaintiff was further damaged in his business or property by the defendants' acts which deprived him of the right to earn a living and practice law free of extortion threats. Plaintiff, as well as other partners, were exposed to corporate/partnership criminal liability for the acts of the defendants, all of which were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint. In addition, by virtue of their unwitting receipt of a percentage of illegal partnership proceeds attributable to the RICO violations by the RICO defendants and their exposure to forfeiture of such funds, other partners, as well as the plaintiff, have been damaged in their business and property.

*Description of the predicate acts:* As set forth above, the predicate acts include obstruction of justice (18 U.S.C. 1503), obstruction of criminal investigations (18 U.S.C. 1510), tampering with a witness, victim or informant (18 U.S.C. 1512), interference with commerce by extortion in violation of 18 U.S.C. 1951, and violation of the Travel Act, 18 U.S.C. 1952. Such misconduct took place in July through early September, 2004. The predicate acts in this Scheme

#2 do not involve predicate offenses of mail or wire fraud.  The predicate acts were intended to protect and further a common plan to permit the continuation and non-disruption of a series of schemes described in the complaint whereby the RICO Defendants violated anti-corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent those illegal partnership proceeds from being exposed to forfeiture.

### III.  Scheme to Omit Material Facts in Reports to Federal Authorities and Disciplinary Counsel.

*The defendants, their alleged misconduct and basis of liability:*  Defendants Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired to, and did in fact, omit material facts in oral and written reports to the U.S. Attorney's office and to the Office of Disciplinary Counsel in September-October, 2004.  Immediately after plaintiff tendered his resignation, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern orchestrated a scheme utilizing the mails, wire and instrumentalities of interstate commerce to conceal the obstruction of justice conspiracy and to impeach plaintiff's credibility in case he were to assist the government in the Morial subpoena matter.  Unbeknownst to plaintiff at the time, the firm made reports to the federal authorities and to disciplinary counsel accusing plaintiff of engaging in prohibited entrepreneurial activities and of various billing irregularities, even though firm management was aware of and had approved of plaintiff's entrepreneurial activities and billing practices.

The reports failed to make any reference to their real motivation (i.e., to destroy plaintiff's credibility with regard to the firm's obstruction of justice).   Adams, Laizer, Lassalle, O'Brien, Spansel and Stern also failed to disclose that numerous partners in the firm engaged in similar entrepreneurial activities which were closely intertwined with their practice of law with

the firm.  Rather, these reports were part of a fraudulent scheme in that, inter alia, they made no reference to their true motive- to protect and preserve the obstruction/fraud schemes to which the plaintiff objected.  Indeed the reports failed to mention the real reasons the firm was taking action against the plaintiff- namely, to silence him, to destroy his credibility in the Morial subpoena matter and other matters, and to deny him access to information and documents regarding the unlawful activities.  Through these reports, the defendants engineered a systematic program of character assassination, which led to his arrest, interim suspension from the practice of law, and false portrayal in the public eye.  See Complaint, Par. 132-134.

This fraudulent scheme constitutes a violation of 18 U.S.C. 1341 (mail fraud), 18 U.S.C. 1343 (wire fraud), and an obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.  Finally to the extent this misconduct constitutes a continuation of the unlawful extortion activity outlined in Scheme 2, Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi in September and October, 2004 in connection with his unlawful extortion activity.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Without additional discovery, plaintiff is unable to identify other alleged wrongdoers at this time.

*The alleged victims and how each victim was allegedly injured:* Plaintiff was subjected to false reports to the U.S. Attorney's office and to Charles Plattsmeier of the Office of Disciplinary Counsel in order to obstruct, delay, hinder or prevent him from communicating information regarding the firm's return on the Morial subpoena.  These false reports led to plaintiff's arrest, interim suspension from the practice of law, and false portrayal in the public eye which injured

8

plaintiff in his business and property and which were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint. Plaintiff was further damaged in his business or property by the defendants' acts which deprived him of the right to earn a living and practice law free of false reporting.

*Description of the predicate acts:* As set forth above, the predicate acts include 18 U.S.C. 1341 (mail fraud), 18 U.S.C. 1343 (wire fraud), obstruction of justice in violation of 18 U.S.C. 1503, and tampering with a witness, victim or informant (18 U.S.C. 1512). Such misconduct took place in September-October, 2004. The predicate acts in this Scheme #3 also involve predicate acts of mail fraud as follows:

| From | To | Date | Content |
| --- | --- | --- | --- |
| Stern | Plattsmeier | 9/17/04 | Reports plaintiff's alleged misconduct, but omits material facts |
| Laizer | AUSA Aluise | 10/19/04 | Provides plaintiff's billable hour/billing history, but omits material facts |

The predicate acts in this Scheme 3 also involve predicate acts of wire fraud as follows:

| From | To | Date | Content |
| --- | --- | --- | --- |
| Stern Laizer | U.S.Attys Letten, Boitman | 9/09/04 9/10/04 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | Plattsmeier | 9/17/04 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern Laizer | AUSA's Aluise and Mann | 9/04-3rd wk 9/04-3rd wk | Follow up to initial report, continues to omit material facts |
| Stern | Plattsmeier | 9/21/04 | Follow up to initial report, continues to |

|  |  |  | omit material facts |
|---|---|---|---|
| Stern | Plattsmeier | 9/28/04 | Follow up to initial report, continues to omit material facts |
| Laizer | Aluise | 9/30/04 | Follow up to initial report, continues to omit material facts |
| Laizer | Aluise | 10/01/04 | Follow up to initial report, continues to omit material facts |
| Stern | Plattsmeier | 10/04/04 | Follow up to initial report, continues to omit material facts |
| Stern | Aluise | 10/07/04 | Follow up to initial report, continues to omit material facts |
| Stern | Plattsmeier | 10/11/04 | Follow up to initial report, continues to omits material facts |

The predicate acts were intended to protect and further a common plan to permit the continuation and non-disruption of a series of schemes described in the complaint whereby the RICO Defendants violated anti-corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent those illegal partnership proceeds from being exposed to forfeiture.

**IV.  Scheme to Further Injure Plaintiff's Business and Property through the Omission of Material Facts in Media Campaigns and communications to plaintiff's clients.**

*The defendants, their alleged misconduct and basis of liability:*  Defendants Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired to, and did in fact, omit material facts in media campaigns and letters to plaintiff's clients.  Plaintiff alleges that to the great consternation of defendants, plaintiff began cooperating with the federal authorities immediately after his arrest.  Specifically, plaintiff began providing information with regard to the Morial subpoena as well as the matters described in the factual background section of the complaint.  In an effort to

10

further injure plaintiff's business reputation and right to earn a living, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired and agreed to hire a public relations firm, to implement a media strategy that included significant misrepresentations of fact.  This media strategy resulted in a number of press releases and media statements which were false and fraudulent in the same manner as was the September 17, 2004 report to the Office of Disciplinary Counsel outlined above which provided the basis for the Office of Disciplinary Counsel's motion for interim suspension of the plaintiff.  See Complaint, Par. 135-136.

In addition, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired and agreed to send letters to plaintiff's clients that included similar significant misrepresentations of fact.  Like the media reports, these letters omitted material information and were false and fraudulent in the same manner as were the reports to the authorities outlined above.  These letters were also intended to injure plaintiff's business reputation and right to earn wages.  These media campaigns and letters to clients were a proximate cause of the injury to plaintiff's business and property.  Although plaintiff did not rely on the fraudulent statements, reliance on the misrepresentations was unnecessary because plaintiff was the target of the fraudulent scheme. See Complaint, Par. 137-138.

The media statements and communications with plaintiff's clients failed to make any reference to their real motivation (i.e., to destroy plaintiff's credibility with regard to the firm's obstruction of justice).   Adams, Laizer, Lassalle, O'Brien, Spansel and Stern also failed to disclose that numerous partners in the firm engaged in similar entrepreneurial activities which were closely intertwined with their practice of law with the firm.  Rather, these reports were part of a fraudulent scheme in that, inter alia, they made no reference to their true motive- to protect

and preserve the obstruction/fraud schemes to which the plaintiff objected. Indeed the media statements and communications with plaintiff's clients failed to mention the real reasons the firm was taking action against the plaintiff- namely, to silence him, to destroy his credibility in the Morial subpoena matter and other matters, and to deny him access to information and documents regarding the unlawful activities.

This fraudulent scheme constitutes a violation of 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud). Finally to the extent this misconduct constitutes a continuation of the unlawful extortion activity outlined in Scheme 2, Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi during the period of October, 2004 through January, 2006 in connection with his unlawful extortion activity.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Other alleged wrongdoers included Ann Wallace and Daniel K. Rester. Ann Wallace was involved in the fraudulent media campaigns, and Daniel K. Rester had multiple communications with, and sent correspondence to, one of plaintiff's former clients, Bally Gaming International.

*The alleged victims and how each victim was allegedly injured:* The false and fraudulent media statements and communications to plaintiff's former clients injured plaintiff in his business and property and were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint. Plaintiff was further damaged in his business or property by the defendants' acts which deprived him of the right to earn a living and practice law without being the target of a fraud scheme.

*Description of the predicate acts:* As set forth above, the predicate acts include a series of acts of mail fraud in violation of 18 U.S.C. 1341 and a series of acts of wire fraud in violation of 18 U.S.C. 1343. Such misconduct took place during the period of October 2004 through January 2006. The predicate acts in this Scheme #4 involve predicate acts of mail fraud as follows:

| *From* | *To* | *Date* | *Content* |
| --- | --- | --- | --- |
| Adams | Media | Oct. 04 | Press release re plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | Harrah's | Oct. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | Pinnacle | Oct. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | Redman Gaming | Oct. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | Panno | Oct. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | OM Operating | Nov. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | KBC | Nov. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| O'Brien Laizer | ASHI | Nov. 04 | Reports plaintiff's alleged misconduct, but omits material facts |
| Rester | Bally | Jan. 06 | Reports plaintiff's alleged misconduct, but omits material facts |

The predicate acts in this Scheme 4 also involve predicate acts of wire fraud as follows:

| *From* | *To* | *Date* | *Content* |
| --- | --- | --- | --- |
| Adams | Media | Oct. 04 | Follow up on initial press release, but omits material facts |

13

| | | | |
|---|---|---|---|
| O'Brien Laizer | Harrah's | Oct. 04 Nov. 04 July 05 | Follow up to initial communication, but omits material facts |
| O'Brien Laizer | Pinnacle | Oct. 04 Nov. 04 Aug. 05 | Follow up to initial communication, continue to omit material facts |
| O'Brien Laizer | Redman Gaming | Oct. 04 | Follow up to initial communication, continue to omit material facts |
| O'Brien Laizer | Panno | Oct. 04 | Follow up to initial communication, continue to omit material facts |
| O'Brien Laizer | OM Operating | Nov. 04 | Follow up to initial communication, continue to omit material facts |
| O'Brien Laizer | KBC | Nov. 04 | Follow up to initial communication, continue to omit material facts |
| O'Brien Laizer | ASHI | Nov. 04 | Follow up to initial communication, continue to omit material facts |
| Rester | Bally | July 05- Jan. 06 | Follow up to initial communication, continue to omit material facts |

The predicate acts were intended to protect and further a common plan to permit the continuation and non-disruption of a series of schemes described in the complaint whereby the RICO Defendants violated anti-corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent those illegal partnership proceeds from being exposed to forfeiture.

**V.  Scheme to Deprive Plaintiff of his COBRA rights and other insurance benefits.**

*The defendants, their alleged misconduct and basis of liability:*  Plaintiff continued to cooperate with the federal authorities through the end of 2004 and into the spring of 2005.  This cooperation continued to include information relating to the factual matters set forth in the factual background section of this complaint.  As a result of plaintiff's cooperation, defendants

Adams, Laizer, Lassalle, O'Brien, Spansel, Stern and others conspired to, and did in fact, injure and intimidate plaintiff on account of his exercise of his right to inform federal officials of their violations of federal law. They did so by unlawfully terminating plaintiff's federal COBRA rights and improperly interfering with other insurance rights belonging to the plaintiff. Complaint, Par. 140.

Plaintiff alleges that, following plaintiff's resignation in September 2004, plaintiff timely made the requisite COBRA election and promptly paid the requisite insurance premiums. Thereafter, on information and belief, the individual defendants instructed firm personnel not to forward health insurance cards to plaintiff, despite the fact that plaintiff timely and properly made his COBRA election and promptly remitted all premiums. In or around January 2005, defendants Adams, Laizer, Lassalle, O'Brien, Spansel and Stern unlawfully decided to terminate plaintiff's COBRA election, even though no valid legal basis existed for them to do so and despite the fact that plaintiff, and not the firm, had the responsibility for paying all of the premiums. Part of this unlawful scheme to deprive plaintiff of his COBRA rights and other insurance benefits included correspondences and communications to third party administrators and insurers. Like the communications outlined in the schemes set forth above, these correspondences and communications omitted material facts and contained material, intentional misrepresentations of fact. The plaintiff was the target of these fraudulent statements which were intended to deprive plaintiff of important insurance rights. See Complaint, Par. 141-142.

These communications and letters omitted material information and were false and fraudulent in the same manner as were the reports to the authorities outlined above. These communications and letters were intended to deprive plaintiff of property rights and insurance

15

coverages and were a proximate cause of the injury to plaintiff's property rights. Although plaintiff did not rely on the fraudulent statements, reliance on the misrepresentations was unnecessary because plaintiff was the target of the fraudulent scheme. This fraudulent scheme constitutes a violation of 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud) and an obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512. Finally to the extent this misconduct constitutes a continuation of the unlawful extortion activity outlined in Scheme 2, Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi during the period of November, 2004 through April, 2006 in connection with his unlawful extortion activity.

   *Other alleged wrongdoers (other than defendants) and their alleged misconduct:*   Other alleged wrongdoers included Ann Lee, Don McKinney, Brooke Duncan, and Robert Shofstahl. Ann Lee withheld and refused to provide the new insurance cards to plaintiff (Blue Cross had changed its group number). McKinney, Duncan and Shofstahl conspired and agreed with the RICO Defendants set forth above to terminate plaintiff's COBRA coverage.

   *The alleged victims and how each victim was allegedly injured:* The false and fraudulent correspondences and communications to third party administrators and insurers were designed to unlawfully deprive plaintiff of his insurance benefits in order to intimidate plaintiff on account of his exercise of his right to inform federal officials of the RICO Defendants' violations of federal law. The unlawful termination of COBRA coverage caused pre-existing condition coverage issues for the plaintiff. In addition, because plaintiff was unable to obtain insurance coverage equivalent to the firm's large group policy, he was forced to purchase more expensive insurance with less coverage. Plaintiff was therefore damaged in his property rights by depriving him of

16

COBRA rights and other insurance benefits to which he was entitled.

*Description of the predicate acts:* As set forth above, the predicate acts include a series of acts of mail fraud in violation of 18 U.S.C. 1341 and a series of acts of wire fraud in violation of 18 U.S.C. 1343 as well as an obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512. To the extent this misconduct constitutes a continuation of the unlawful extortion activity outlined in Scheme 2, Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi during the period of November 2004 through April 2006 in connection with his unlawful extortion activity.

The misconduct in this scheme took place during the period of November 2004 through January 2006. The predicate acts in this Scheme #5 involve multiple predicate acts of mail fraud as follows:

| From | To | Date | Content |
|------|-----|------|---------|
| Laizer | BlueCross CobraServe | Jan. 05 | Provides info regarding plaintiff's alleged misconduct, but omits material facts |
| Laizer | Prudential | Mar. 05 | Provides info regarding plaintiff's alleged misconduct, but omits material facts |
| Laizer | Prudential | Apr. 05 | Provides info regarding plaintiff's alleged misconduct, but omits material facts |
| Laizer | Prudential | Apr. 06 | Provides info regarding plaintiff's billing history, but misrepresents facts |

The predicate acts in this Scheme 5 also involve predicate acts of wire fraud as follows:

| From | To | Date | Content |
|------|-----|------|---------|
| Laizer | BlueCross CobraServe | Dec. 04 Jan. 05 | Provides info regarding plaintiff's alleged misconduct, but omits material facts |

17

| Laizer | Prudential | Mar. 05 | Follow up to initial communication, |
|--------|-----------|---------|-------------------------------------|
|        |           | Apr. 05 | but omits material facts            |
|        |           | Apr. 06 |                                     |

## VI.  Scheme to Deprive Plaintiff of his capital account.

*The defendants, their alleged misconduct and basis of liability:* By way of background, plaintiff was entitled to receive, upon his resignation from the partnership, the balance of his capital account which was in excess of $100,000 in accordance with the terms of the partnership agreement.  In March 2005, the firm filed its partnership income tax returns including Schedule K-1's for all persons who held an interest in the partnership during 2004.  Included in this filing was plaintiff's Schedule K-1.   Plaintiff's K-1, as filed with the IRS, reflected that the balance of plaintiff's capital account was distributed to the plaintiff.  However, as plaintiff's cooperation continued through 2005 and into 2006, and since the defendants were aware that plaintiff's cooperation focused on their illegal activities, the defendants fraudulently schemed and decided not to distribute the proceeds of plaintiff's capital account to plaintiff, and they used the U.S. mails, wires, and instrumentalities of interstate commerce to advance, conceal and further this fraud scheme.  See Complaint, Par. 143-144.

Defendants Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired to, and did in fact withhold the proceeds of plaintiff's capital account from him.  Part of this scheme involved "ginning up" claims from plaintiff's clients in order to provide a purported basis to withhold the balance of plaintiff's capital account from plaintiff.  By way of background, when Stern, Laizer and Spansel met with the U.S. Attorney's office in December 2004, the U.S. Attorney's office advised them that none of plaintiff's clients had asserted any claims to the monies held in the registry of the court.  The U.S. Attorney's office cautioned Stern, Laizer and Spansel about

18

clients who claim "victim status," but who were not victims.  The U.S. Attorney's office advised the firm not to settle with any of plaintiff's clients, noting that it created a "real problem" for the United States if the firm settled with clients who were not victims, specifically mentioning Robert Guidry and Pinnacle Entertainment.

In March 2005, Adams wrote in a memo in connection with the proposed merger of the firm with another law firm in Tennessee that: "No actions [by any of plaintiff's clients] have been brought against the firm.  We have been advised by the U.S. Attorney not to settle with any former client [of plaintiff] any claims they might assert against us arising from that representation.  Several of them are now the subject of the investigation.  Furthermore, we believe our ALAS professional liability insurance would provide coverage if needed, for liability other than disgorgement of fees paid to the firm."  Based on this memo, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern could find no basis to withhold plaintiff's capital account.

However, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern had created a proverbial trick bag for themselves.  They were faced with needing a conflict of interest waiver to continue to represent plaintiff's former clients such as Guidry and Harrah's who were among the largest clients of the firm.  This waiver was necessary because they had misrepresented to those clients (as set forth above in Scheme 4) that plaintiff had improperly billed them and therefore, those clients arguably had a claim for disgorgement of those fees.  The firm could not continue to represent those clients absent a waiver.

Motivated by avarice and the desire to retain those clients without having to disgorge any fees caused by their own misrepresentations of fact, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern conspired to, and did in fact, embark on a fraud scheme to make the plaintiff the "fall

guy" by seeking to re-cast any potential claims as those arising out of plaintiff's alleged

malpractice, for which the firm was only vicariously liable and for which the firm had insurance

coverage through its malpractice carrier, Attorneys Liability Assurance Society ("ALAS").  If,

on the other hand, the clients asserted claims that they were overcharged, the firm could

conceivably be forced to disgorge such fees, and such claims would not be covered by ALAS.

    As part of this fraud scheme, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern

conspired to, and did in fact, make fraudulent misrepresentations and omissions of material fact

about claims made by Guidry, Pinnacle, and others to ALAS to support conclusions and opinions

regarding liability issues.  These misrepresentations and omissions were made to obtain ALAS'

consent to the payment of monies as consideration for conflict waivers disguised as settlements.

In addition, despite the specific request from the U.S. Attorney's office, this fraud scheme

demonstrated the ability of the proverbial Adams and Reese tail to wag the U.S. Attorney dog, as

noted in other schemes in the Complaint.

    Based on plaintiff's cooperation with the federal authorities, Adams, Laizer, Lassalle,

O'Brien, Spansel and Stern became aware that plaintiff had information and documents with

regard to how the firm had misrepresented to ALAS the facts and circumstances concerning

various claims in order to obtain coverage for otherwise excluded claims.  By misrepresenting

facts to support conclusions and opinions concerning liability issues, and by seeking to cloak

such discussions as privileged pursuant to the common interest of the firm and ALAS in

defending anticipated litigation, Adams, Laizer, Lassalle, O'Brien, Spansel and Stern sought to

block the plaintiff from defending himself and from providing voluminous information to ALAS

to demonstrate how Adams, Laizer, Lassalle, O'Brien, Spansel and Stern had misrepresented

information to ALAS in order to obtain coverage for claims in this matter and others.

This fraudulent scheme constitutes a violation of 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud). Finally to the extent this misconduct constitutes a continuation of the unlawful extortion scheme outlined in Scheme 2, Adams violated the Travel Act, 18 U.S.C. 1952, by multiple instances of interstate travel between New Orleans, Louisiana and Jackson, Mississippi during the period of December, 2004 through May, 2006 in connection with his unlawful extortion scheme.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Without additional discovery, plaintiff is unable to identify other alleged wrongdoers at this time.

*The alleged victims and how each victim was allegedly injured:* The false and fraudulent statements and communications to ALAS injured plaintiff in his business and property in that it provided a purported basis to withhold his capital account and exposed plaintiff to liability from lawsuits and claims which were not settled. Furthermore, the predicate acts were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint. Plaintiff was further damaged in his business or property by the defendants' acts which deprived him of the right to earn a living and practice law without being the target of a fraud scheme.

*Description of the predicate acts:* As set forth above, the predicate acts include a series of acts of mail fraud in violation of 18 U.S.C. 1341 and a series of acts of wire fraud in violation of 18 U.S.C. 1343. Such misconduct took place during the period of December 2004 through May 2006. The predicate acts in this Scheme #6 involve predicate acts of mail fraud as follows:

| From | To | Date | Content |
|---|---|---|---|
| Stern | ALAS | Jan. 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Apr. 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | May 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Jul. 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Aug 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Oct. 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Nov. 05 | Reports plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Jan. 06 | Reports plaintiff's alleged misconduct, but omits material facts |

The predicate acts in this Scheme 6 also involve predicate acts of wire fraud as follows:

| From | To | Date | Content |
|---|---|---|---|
| Stern | ALAS | Dec. 04 | Misrepresents info and omits material facts |
| Stern | ALAS | Oct. 05 | Discusses plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Nov. 05 | Discusses plaintiff's alleged misconduct, but omits material facts |
| Stern | ALAS | Jan. 06 | Discusses plaintiff's alleged misconduct, but omits material facts |

**VII.  Scheme to unlawfully obtain confidential information regarding plaintiff's**

22

**cooperation and to unlawfully influence same.**

*The defendants, their alleged misconduct and basis of liability:* Following Hurricane Katrina in August 2005, the defendants learned with great chagrin that the information and documents that plaintiff had provided during his cooperation had survived the storm, despite massive damage to the FBI offices on the lakefront. Beginning in early 2006, in response to learning that plaintiff's cooperation information had survived Katrina, the individual defendants herein embarked on a plan to unlawfully obtain sensitive confidential information regarding plaintiff's cooperation against the firm and its clients. Through a series of leaks throughout 2006, plaintiff became aware that sensitive and confidential information that he was providing to the government was being leaked to the firm. Communication of the leaks to the plaintiff was often accompanied by increasingly explicit threats to his safety. For example, on December 8, 2006, a messenger advised plaintiff "to shut his mouth" or suffer the consequences. See Complaint, Par. 145-146. This misconduct constitutes a continuation of the above-referenced obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.

Just prior to this threat, plaintiff encountered Vosbein in a Metairie parking lot. Vosbein told plaintiff that he would "make it worth plaintiff's while" by acknowledging that he had approved and authorized plaintiff's entrepreneurial activities and by assisting the plaintiff in recovering plaintiff's assets if plaintiff would stop ratting on Vosbein and the other defendants and stop cooperating with the government. Plaintiff responded by advising that he would do the right thing and continue to provide truthful information to the government. Vosbein got visibly angry and warned plaintiff that he had better be careful because "the snitch usually ends up in the ditch." See Complaint, Par. 147. This misconduct constitutes a violation of 18 U.S.C. 201

(bribery) as well as a continuation of the above-referenced obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.

Vosbein told plaintiff that he was too naïve to see that the fix was already in, despite plaintiff's continuing to provide information to the government. Vosbein further advised plaintiff that the U.S. Attorney would never jeopardize the Edwards conviction, and as a result, the firm would be untouchable with regard to the information plaintiff provided during his cooperation. Vosbein predicted that the U.S. Attorney's office would never validate any of plaintiff's cooperation in order to ensure that there was no threat to the Edwards conviction. On December 12, 2006, shortly after this meeting with Vosbein and the December 8 threat, plaintiff was attacked by gunfire in front of his residence. Although plaintiff called 911 and a police report was filed, the U.S. Attorney's office took no steps to investigate this attempted murder even though plaintiff had been cooperating with the federal authorities for over two years. See Complaint, Par. 148-149.

In early 2007, the federal prosecutors met with some of the defendants herein to discuss the criminal investigation and outcome of the expected proceedings against plaintiff herein. During this meeting, one of the prosecutors unlawfully provided information to some of the defendants herein of the contents of plaintiff's personal income tax returns in violation of various federal statutes. In addition, the prosecutors unlawfully provided information regarding plaintiff's defenses to the criminal case as well as information relating to his cooperation against the firm. This unlawful disclosure allowed the individual defendants herein to shore up their defenses in anticipation of the upcoming indictment of the plaintiff herein. See Complaint, Par. 150.

24

This misconduct constitutes a violations of 18 U.S.C. 1503, 18 U.S.C. 1512, and 18 U.S.C. 1513.

*Other alleged wrongdoers (other than defendants) and their alleged misconduct:* Without additional discovery, plaintiff is unable to identify other alleged wrongdoers at this time.

*The alleged victims and how each victim was allegedly injured:* Plaintiff was subjected to bribery, threats, harassment and intimidation to obstruct, delay, hinder or prevent him from cooperating with the federal authorities, which ultimately resulted in the plaintiff being the subject of an attempted murder, which also damaged his property. Plaintiff was further damaged in his business or property by the defendant's acts which deprived him of the right to earn a living and practice law free of corrupt bribes or threats.

*Description of the predicate acts:* As set forth above, the predicate acts include bribery (18 U.S.C. 201), obstruction of justice (18 U.S.C. 1503), obstruction of criminal investigations (18 U.S.C. 1510), tampering with a witness, victim or informant (18 U.S.C. 1512), and retaliating against a witness, victim or an informant in violation of 18 U.S.C. 1513. Such misconduct took place during the period of October 2005 through early February, 2007. The predicate acts in this Scheme #7 do not involve predicate offenses of mail or wire fraud. The predicate acts were intended to protect and further a common plan to permit the continuation and non-disruption of a series of schemes described in the complaint whereby the RICO Defendants violated anti-corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent those illegal partnership proceeds from being exposed to forfeiture.

**VIII.  Scheme to obstruct criminal investigations of Morial and Wooley.**

*The defendants, their alleged misconduct and basis of liability:*  Despite plaintiff's indictment in March 2007, plaintiff continued to provide information to the Public Integrity Section of the Justice Department in Washington.  In connection with this cooperation, plaintiff described how he did not proceed through the cooperation process in the normal fashion and the lack of follow up regarding the information provided.  Following plaintiff's communications with the Public Integrity Section, a federal grand jury in the Eastern district of Louisiana issued another subpoena to the firm in October 2007 (the "Third Morial Subpoena").  The Third Morial Subpoena closely tracked the information provided by plaintiff during his cooperation.  Once again, Adams, Stern, Brooks and Lassalle herein conspired to, and did in fact, obstruct justice by deliberately not producing documents that they knew had been provided by plaintiff to the federal authorities.  The federal authorities, however, failed to follow up on this clear obstruction of justice, fulfilling Vosbein's prediction that the fix was in- i.e., the information provided by the plaintiff would not be validated, and the firm would be untouchable.  See Complaint, Par. 151-152. This misconduct is a continuation of the prior misconduct and constitutes an obstruction of justice in violation of 18 U.S.C. 1503 and 18 U.S.C. 1512.

Vosbein's prediction also played out in connection with the federal grand jury subpoena issued to Robert Wooley in October 2007.  This subpoena also tracked information provided by plaintiff during his cooperation, and the investigation was being handled by AUSA's Mann, Harper and Perricone who had direct access to the information supplied by plaintiff during his cooperation.  Once again, defendant Stern and Brooks conspired to, and did in fact, obstruct justice by deliberately not producing information that they knew had been provided by plaintiff to the federal authorities.  Once again, the federal authorities refused to follow up on this clear

obstruction of justice, fulfilling Vosbein's prediction.  On information and belief, the firm was given a free pass in exchange for implicitly agreeing that it would walk away from a claim on plaintiff's seized assets, allowing the government to claim a large forfeiture.  See Complaint, Par. 153.  This misconduct also constitutes obstruction of justice in violation of 18 U.S.C. 1503 and tampering with a witness in violation of 18 U.S.C. 1512.

   *Other alleged wrongdoers (other than defendants) and their alleged misconduct:*  Other alleged wrongdoers included Don McKinney and Robert Wooley.  McKinney was involved in reviewing Morial's work and client records and in preparing letters to Morial's clients regarding the subpoena and attorney-client privilege issues.  Wooley was directly involved in the decisions not to produce certain documents responsive to the subpoena for his records.

   *The alleged victims and how each victim was allegedly injured:* Plaintiff was subjected to threats, harassment and intimidation to obstruct, delay, hinder or prevent him from communicating information to the authorities regarding the firm's return on both the Morial subpoena and the Wooley subpoena.  Plaintiff, as well as other partners, were exposed to corporate/partnership criminal liability for the acts of the RICO defendants, all of which were designed to protect the fraud schemes and illegal partnership proceeds attributable to the RICO violations by the RICO defendants set forth in the background section of the Complaint.  In addition, by virtue of their unwitting receipt of a percentage of illegal partnership proceeds attributable to the RICO violations by the RICO defendants and their exposure to forfeiture of such funds, other partners, as well as the plaintiff, have been damaged in their business and property.

   *Description of the predicate acts:* As set forth above, the predicate acts include

27

obstruction of justice (18 U.S.C. 1503) and tampering with a witness, victim or informant (18

U.S.C. 1512).  Such misconduct took place in October-November, 2007.  The predicate acts in

this Scheme #8 do not involve predicate offenses of mail or wire fraud.  The predicate acts were

intended to protect and further a common plan to permit the continuation and non-disruption of a

series of schemes described in the complaint whereby the RICO Defendants violated anti-

corruption laws and ethics rules in order to maximize profits for the enterprise and to prevent

those illegal partnership proceeds from being exposed to forfeiture.

**Case Statement Item #6.**  *Description of the alleged enterprise for each RICO claim:*
The alleged enterprise within the meaning of 18 U.S.C. 1961(4) that is engaged in and affects

interstate commerce for both the plaintiff's 18 U.S.C. 1962(c) and 18 U.S.C. 1962(d) claims is

Adams and Reese, L.L.P. ("Adams and Reese" or the "firm"), a law firm engaged in the practice

of law with offices in several states and its principal offices in New Orleans, Louisiana.  The

firm is a legitimate entity and lawful enterprise engaged in the practice of law in several

jurisdictions, and it is a formal legal entity (registered limited liability partnership) with a distinct

partnership and management structure.  As set forth in the Paragraph 1 of the Complaint, the

RICO Defendants are seven senior partners in the firm (Adams, Brooks, Laizer, O'Brien,

Spansel, Stern, and Vosbein) and the firm's Chief Financial Officer (Lassalle).  They are

associated with the enterprise by virtue of their each holding senior management and

administrative positions within the firm, and in such capacities, it is alleged that they operated,

managed and participated in the conduct of the affairs of the RICO enterprise (i.e., the firm) by

engaging in a pattern of racketeering activity, comprised of repeated predicate acts as listed

above, and conspiring to do so.   As more fully set forth in the Complaint, the firm is <u>not</u> named

as a RICO Defendant.  The RICO Defendants are individuals separate from the alleged

enterprise; the defendants are not the enterprise itself.

**Case Statement Item #7.**  *Description of how the pattern of racketeering activity and the*

*enterprise are separate or have merged into one entity:*    The reference to the "enterprise" in the

Complaint denotes the entire law firm entity which is larger than, and conceptually distinct from,

the pattern of racketeering activity conducted by the individual RICO Defendants.  The firm has

a structure which exists for the purpose of maintaining operations through the lawful practice of

law toward an economic goal (i.e., making money) that has an existence that is separate from the

commission of the predicate acts constituting the pattern of racketeering activity.

The law firm is a legitimate business enterprise which has been misused by the RICO

Defendants who have conducted or participated in the conduct of the affairs of the enterprise

through a pattern of racketeering activity consisting of a series of unlawful schemes and multiple

predicate acts for the purpose of making money from repeated criminal activity (that could not

have been made through the lawful practice of law).

**Case Statement Item #8.**  *Description of the alleged relationship between the activities*

*of the enterprise and the pattern of racketeering activity:* The enterprise carries out legitimate

objectives in addition to the allegedly criminal actions set forth in the Complaint.  The usual and

daily activities of the enterprise involve the day-to-day lawful practice of law.  The matters set

forth in the plaintiff's Complaint involve the misuse of the legitimate business enterprise through

a series of unlawful schemes for the purpose of making additional money from repeated criminal

activity.

**Case Statement Item #9.**  *Description of the benefits, if any, the alleged enterprise*

*receives from the alleged pattern of racketeering activity:* The firm receives illegal partnership profits from the repeated criminal activity outlined in the Complaint (that could not have been made through the lawful practice of law).

**Case Statement Item #10.** *Description of the effect of the activities of the enterprise on interstate or foreign commerce:* The enterprise consists of approximately 300 lawyers with offices in several states and thousands of clients across the country and worldwide. The activities of the enterprise have a substantial effect and impact on interstate and foreign commerce. In addition, plaintiff's RICO claims are based upon violations of federal criminal statutes, the nexus with interstate commerce being necessarily established by the commission of the underlying federal crimes.

**Case Statement Item #11.** The complaint does not allege a violation of 18 U.S.C. 1962(a).

**Case Statement Item #12.** The complaint does not allege a violation of 18 U.S.C. 1962(b).

**Case Statement Item #13.** *If the complaint alleges a violation of 18 U.S.C. 1962(c), state who is employed by or associated with the enterprise and state whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c):* Adams, Brooks, Laizer, Lassalle, O'Brien, Spansel, Stern, and Vosbein are RICO persons as that term is defined by 18 U.S.C. 1962 (collectively, the RICO Defendants) and are employed by or associated with the enterprise. The RICO Defendants hold senior management and administrative positions within the firm, and in such capacity, conducted or participated in the conduct of enterprise's affairs. The RICO Defendants are the liable "persons" and are distinguished from and separate from the

enterprise (the firm).  In other words, the same entity is not both the liable "person" and the "enterprise" under Section 1962(c).  See *Cedric Kushner Promotions, Ltd. v. Don King*, 533 U.S. 158, 163-164 (2001); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).

**Case Statement Item #14.**  *If the complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the alleged conspiracy:* Case Statement Items 2-5 are incorporated herein by reference.  As set forth in Case Statement Items 2-5, the RICO Defendants agreed and conspired to participate in the conduct of the affairs of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. 1962(d).

**Case Statement Item #15.**  *Description of the alleged injury to business or property.* The injuries to plaintiff's business and property include, inter alia, interference with his right to practice law and earn a living, false reporting, false arrest and false imprisonment resulting in interference with his right to conduct business, interference with his property rights in his partnership interest, interference with his relationships with his current and prospective clients, damage to his business reputation, unlawful withholding of his capital account, increased insurance costs, exposure to losses from lawsuits as a result of the activities of the RICO Defendants, and damage to his property interests during the shooting incident.

**Case Statement Item #16.**  *Description of the relationship between the alleged injury and the violation of the RICO statute:* The alleged injury to plaintiff's business and property outlined in Case Statement Items 2-5 and Item 15 are directly related to, and proximately caused by, the predicate acts constituting the pattern of racketeering activity of the RICO Defendants.

**Case Statement Item #17.**  *Listing of the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.*  The

individual RICO Defendants are liable for the following damages:

| | |
|---|---|
| Interference with plaintiff's right to practice law and earn a living, including false reporting, false arrest and false imprisonment resulting in interference with plaintiff's right to conduct business | $1,500,000 |
| Interference with plaintiff's property rights in his partnership interest | $250,000 |
| Interference with plaintiff's relationships with his current and prospective clients and damage to his business reputation | $1,000,000 |
| Unlawful withholding of plaintiff's capital account and SRP | $250,000 |
| Increased insurance costs | $5,000 |
| Exposure to losses from lawsuits from activities of RICO Defendants | $1,000,000 |
| Damage to plaintiff's property interests during the shooting incident | $1,000 |
| Total: | $4,006,000 |

Although plaintiff does not name the firm as a liable RICO defendant person, plaintiff argues in Paragraph 158 that vicarious liability should be imposed on the firm.

**Case Statement Item #18.** *List all other federal causes of action, if any, and provide the relevant statute numbers:* There are no other federal causes of action asserted in the complaint.

**Case Statement Item #19.** *List all pendent state claims, if any:* There are no pendant state claims asserted in the complaint.

**Case Statement Item #20.** *Provide any additional information that may be helpful to the Court in processing the RICO claim.* To the extent the court requires additional information above and beyond what is contained herein, plaintiff will promptly amend this Case Statement to provide any additional information requested.

Respectfully submitted,


*/s/ Robert H. Matthews*
Robert H. Matthews, BAR #9055
830 Union Street, 4th Floor
New Orleans, LA 70112
telephone: (504) 523-4542
fax: (504) 523-6139
e-mail: mattbo52@aol.com


*/s/ Pauline M. Warriner*
Pauline M. Warriner, Bar #22673
830 Union Street, 4th Floor
New Orleans, LA 70112
telephone: (504) 523-4542
fax: (504) 523-6139
e-mail: paulinewarriner@aol.com


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the above and foregoing pleading has been filed electronically with the United States District Court for the Eastern District of Louisiana, Clerk of Court by using the CM/ECF system which will send a notice electronic filing to all counsel of record on this 9th day of July, 2008.

*/s/ Robert H. Matthews*
ROBERT H. MATTHEWS